

**SIGNED this 29th day of May, 2014.**

_____
**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**

_____

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 08-52898-CAG |
| | § | |
| MICHAEL J. HEINZLE AND | § | |
| KATHERINE A. HEINZLE, | § | |
| | § | CHAPTER 13 |
| Debtors. | § | |

**MEMORANDUM OPINION AND ORDER GRANTING IN PART, DENYING IN PART,**
**CHAPTER 13 TRUSTEE'S MOTION TO DENY DISCHARGE AND DISMISS CASE**

Came on to be considered the above-numbered bankruptcy case, and, in particular, the

Chapter 13 Trustee's Motion to Deny Discharge and Dismiss Case  (ECF No. 48)(the "Motion"),

and Debtors' Response thereto (ECF No. 49).  The Court has jurisdiction over this proceeding

under 28 U.S.C. §§ 157 and 1334.  Venue is proper under 28 U.S.C. § 1408(1).  This matter is

referred to this Court under the District's Standing Order of Reference.  This matter is a core

proceeding under 11 U.S.C. § 157(b)(2)(A) in which the Court may enter a final order. The

Court notes that the Supreme Court's decision in ***Stern v. Marshall***, 131 S. Ct. 2594 (2011), does

not suggest or hold that this Court lacks authority to hear and enter final orders regarding a

debtor's discharge.  The Court finds that this is a contested matter as defined under Fed. R.

Bankr. P. 9014.  As such, the Court makes the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.  The Court took this matter under advisement and finds that the Chapter 13 Trustee's (the "Trustee") Motion should be GRANTED in part, and DENIED in part.

## BACKGROUND

Debtors Michael and Katherine Heinzle filed Chapter 13 bankruptcy on October 3, 2008 (ECF No. 1).  On January 15, 2009, the Court entered an Order Confirming the Debtors' Plan, Awarding a Fee to the Debtors' Attorney, and Related Orders providing that Debtors must make a Plan payment of $560.00 per month for a period of 36 months (ECF No. 22).  This payment would make available a base amount of $21,160.00 for distribution to creditors (ECF No. 22).  The Order also stated that Debtors were to pay their post-petition mortgage payments directly to their lender, Countrywide Home Loans, and cure the pre-petition mortgage arrears through their Plan with an interest rate of nine percent.

On September 11, 2009, BAC Home Loans Servicing, LP ("BAC") (fka Countrywide Home Loans Servicing, LP) filed its Motion for Relief from Stay Pursuant to 11 U.S.C. § 362(d) (ECF No. 25).  The Motion for Relief from Stay states that "Debtors have failed to maintain current the post-petition payments due under the note and are presently in arrears for 6 payments through and including the September 01, 2009 payment."  (ECF No. 25, ¶5).  As a result of Debtors' post-petition delinquency, BAC asked that the Court lift the automatic stay to allow BAC to pursue its state law remedies, including foreclosure, on Debtors' homestead property.  Debtors filed a Response in the form of a general denial as to the allegations in BAC's motion.  A hearing was held on BAC's Motion for Relief from Stay on October 5, 2009, and the Court entered an Agreed Order Conditioning Automatic Stay as to Debtors (ECF No. 29).  The Agreed Order Conditioning Automatic Stay as to Debtors provides, in relevant part, that "Debtors shall

2

have 30 days from the date of the hearing or before November 4, 2009 to modify Debtors'
Chapter 13 Plan to include all post-petition arrearages and attorney's fees and costs in the total
amount of $6,460.90 to be paid by the Chapter 13 Trustee through the Debtors' Chapter 13
Plan." (ECF No. 29, ¶3). Debtors' Chapter 13 Plan was modified by Court order on July 7,
2010, to include Debtors' post-petition arrears for delinquent mortgage payments and to increase
the Plan term to sixty months (ECF No. 39).

Debtors' case was marked by a number of other events that underscored Debtors'
difficulty in maintaining both Plan and direct mortgage payments. Notably, the Chapter 13
Trustee moved to dismiss Debtors' bankruptcy case on April 20, 2010, (ECF No. 34) and BAC
filed a Notice of Termination of Automatic Stay Due to Failure to Cure Default on August 9,
2010 (ECF No. 41).[1] Both documents were subsequently withdrawn.

Pursuant to Fed. R. Bankr. P. 3002.1(f), the Trustee filed her Notice of Final Cure
Payment ("Notice") (ECF No. 47). The Trustee indicated in her Notice that she had paid both
the pre-petition and post-petition arrears to BAC. Further, pursuant to Fed. R. Bankr. P.
3002.1(g), BAC had 21 days to file a supplement to its proof of claim agreeing with the
Trustee's Notice that Debtors' were current on all payments to BAC. On September 27, 2013,
BAC filed its Statement in Response to Notice of Final Cure Payment indicating that it agreed
with the Trustee's Notice that Debtors have paid the full amount required to cure the default on
BAC's claim, but disagreeing that Debtors are current with respect to all payments required by §
1322(b)(5).[2] BAC stated that Debtors were delinquent in the amount of $33,467.35 for roughly
thirty post-petition mortgage payments. Based on Debtors' post-petition delinquency on their
mortgage payments, the Trustee filed her Motion to Deny Discharge and Dismiss Case.

---

1 The Debtors had filed a previous Chapter 13 case, No. 05-52539, which the Court dismissed for failure to comply
with stipulations incident to a Trustee's Motion to Dismiss.
2 Unless otherwise indicated, all references are to 11 U.S.C. *et seq.*

## PARTIES CONTENTIONS

The Trustee argues that the:

(1) The confirmed plan implies that Debtors are assuming the duties of the Trustee to make direct payments to creditors.  As such, the Trustee asserts that direct payments to the mortgage lender constitute payments under the plan.

(2) Debtors' failure to make the payments due under the plan (including mortgage payments) is a default under the plan.  As such, Debtors are not entitled to a discharge under § 1328(a).

(3) Because Debtors have made all payments under the plan for a term of 60 months, the plan cannot be modified. § 1329(c).  As such, because the plan term is completed and Debtors may not now modify the plan to cure a plan default, the Trustee maintains that dismissal of the case is appropriate.

In response, Debtors argue that "payments under the plan" is an undefined phrase under the Bankruptcy Code.  Rather, Debtors ask the Court to examine the language of § 1328(a), which states:

> (a) Subject to subsection (d), as soon as practicable after completion by the debtor of all payments under the plan, and in the case of a debtor who is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, after such debtor certifies that all amounts payable under such order or such statute that are due on or before the date of the certification (including amounts due before the petition was filed, but only to the extent provided for by the plan) have been paid, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—
>
> . . .

Debtors argue that, under § 1328(a), the phrase "payments under the plan" means those payments Debtors make directly to the Chapter 13 Trustee as specified in the Plan.  Debtors

4

maintain that the phrase "after completion by the debtor of all payments" denotes only those payments the debtor makes to the Trustee.  Further, when examining the context of payments "under" the plan, the proper construction is to conclude that "under" only refers to Chapter 13 plan payments, not payments made directly to a mortgagee.  Debtors suggest that *Colliers on Bankruptcy* supports such a conclusion. *See* 8 *Collier on Bankruptcy*, ¶ 1328.02 (16th ed. 2013) ("[t]he phrase 'completion by the debtor of all payments under the plan' in § 1328(a) clearly refers to payments made by the debtor to the trustee").  Debtors further maintain that payments to the mortgagee are controlled by the mortgage note, and not the Plan.

In addition, Debtors' argue that the Court should adopt their construction of § 1328(a) that a discharge must be granted when plan payments, not post-petition mortgage payments, are made because such a construction harmonizes the language in §§ 1328(a) and 1329(a).  Debtors reason that, because § 1329(a) precludes further modification of the plan after all payments are made under the plan, allowing the Trustee to object to Debtors' discharge after all payments are completed under the plan for purposes of receiving a discharge under § 1328(a) would mean that the plan is deemed "completed" for purposes of § 1329(a), but not for purposes of § 1328(a).  Debtors posit that such a conclusion places the purpose and intent of §§ 1328(a) and 1329(a) at odds. *See **In re Ezzell***, 438 B.R. 108, 115-16 (Bankr. S.D. Tex. 2010) (both provisions should be read harmoniously).

## FINDINGS OF FACT

No evidence was taken at the hearing and both parties stipulated as to the operative facts. Specifically, Debtors completed all plan payments, including payment of BAC's pre-petition arrears and those post-petition arrears cured by the Trustee pursuant to the Order Conditioning the Stay.  The only "default" under the Plan was Debtors' failure to make their post-petition mortgage payments directly to the mortgagee.  Absent this delinquency, Debtors would be

entitled to a discharge under § 1328(a).

<h1 style="text-align:center">CONCLUSIONS OF LAW</h1>

As an initial matter, the Court notes that the San Antonio Division of the Western District of Texas is not a "conduit"[3] mortgage division. That is, debtors in this division are not required to make their post-petition mortgage payments through the Trustee who, in turn, would remit the payments to the mortgage lender. Conduit mortgage divisions or districts require debtors to make their post-petition mortgage payment to the trustee if the debtors were delinquent in making mortgage payments prior to filing Chapter 13 bankruptcy.[4]

In non-conduit districts or divisions, a debtors' failure to make post-petition payments to their mortgage lender generally leads to the lender filing a motion for relief from stay with the attendant result being that the parties reach an agreement to allow the debtors to cure the delinquency through the plan or the stay is lifted. In these districts or divisions, there is no independent requirement to pay post-petition mortgage payments to the Chapter 13 Trustee who would in turn make the requisite payments to the mortgage lender.

In addition, like most bankruptcy courts, the San Antonio Division uses a "form" plan. The form plan in this division has language governing the debtor's duties pursuant to the plan, and identifies which creditors will be paid pursuant to the plan and how they will be paid. Both the Trustee and Debtors' counsel argued that particular provisions of the form plan govern this Court's determination as to whether Debtors' mortgage payments constitute payments under the

---

3 A "conduit" mortgage division or district is one in which the debtors include in their plan payments their post-petition mortgage payment as well. The Chapter 13 trustee acts as the disbursing agent to the mortgage lender. The rationale behind such a practice is that it ensures debtors remain current on both plan and mortgage payments. It also allows the Chapter 13 trustee the ability to monitor changes in escrow accounts and verify if the mortgage lender is asserting unwarranted charges during the pendency of the case.

4 For the twelve-month period ending September 30, 2005, the majority of Chapter 13 trustees across the nation utilized conduit mortgage payments. Sixty percent of the trustees made at least some conduit mortgage payments during FY 2005, and 47 percent used the practice almost exclusively. *See* Gordon Bermant & Jean Braucher, *Making Post-Petition Mortgage Payments Inside Chapter 13 Plans: Facts, Law, Policy*, 80 Am. Bankr. L. J. 261, 270 (2006).

plan. The question of whether a post-petition mortgage payment is a payment under the plan determines whether delinquent mortgage payments are a material default under the plan, thereby precluding a discharge under § 1328(a).

## I. How Does 11 U.S.C. § 1322(b)(5) Apply?

Debtors and Trustee agree that Debtors' post-petition mortgage delinquency is not discharged under §§ 1322(b)(5) and 1328(a)(1). Section 1322(b)(5) allows a debtor to cure a default on a long term secured or unsecured debt in which the last payment is due after the final date on which the final payment is due under the plan. 8 *Collier on Bankruptcy* ¶ 1322.09[1] (16th ed. 2011). In this case, Debtors proposed to cure their mortgage delinquency pursuant to their plan. It is uncontroverted that Debtors' mortgage obligations continue after plan payments. Section 1328(a)(1) states that a debt provided for under § 1322(b)(5) is not discharged. Nonetheless, Debtors correctly argue that a failure to make post-petition mortgage payments is not a specific basis to deny their Chapter 13 discharge under § 1328(a).

The Court also agrees with Debtors' assertion that a full discharge is not necessary to protect the interest of the mortgage lender. Debtors concede that their mortgage debt survives discharge under § 1328(a)(1). Debtors also acknowledge that the mortgage lender may proceed under its state law remedies, including foreclosure, even after Debtors' receive a discharge. With these acknowledgements, Debtors posit why the Court should consider denying their discharge if the lender and the creditor body appears completely disinterested because no party other than the Trustee is asking the Court to deny Debtors' discharge.

As such, the linchpin question that the Court must answer is whether payments pursuant to § 1322(b)(5) constitute "payments under the plan." If § 1322(b)(5) payments are deemed "under the plan," Chapter 13 debtors must maintain their post-petition mortgage payments in order to be entitled to receive a discharge upon completion of the plan's term. If § 1322(b)(5)

payments are not considered "under the plan," then debtors may receive a discharge notwithstanding their failure to maintain their post-petition mortgage payments.

**II.     Are Direct Payments to the Mortgage Lender Pursuant to § 1322(b)(5) Considered Payments "Under the Plan"?**

Notwithstanding Debtors' arguments concerning what constitutes payments under and outside the plan, courts in this circuit and elsewhere have concluded that payments made directly to a mortgagee are plan payments.  The Fifth Circuit held in ***In re Foster***, 670 F.2d 478 (5th Cir. 1982), that mortgage payments made by the debtors directly to their lender constitute plan payments despite the debtors' characterization that the payments were being made outside the Chapter 13 plan.  In ***Foster***, the bankruptcy court denied confirmation of the debtors' Chapter 13 plan because the debtors proposed to make their post-petition mortgage payments directly to their mortgage lender.  ***Id.*** at 482.  The bankruptcy court concluded that Chapter 13 policy requires that all payments must be made to the trustee and through the plan.  ***Id***.

In ***Foster***, the Fifth Circuit began its analysis by discussing the basic components of Chapter 13 plans and analyzing the treatment of secured claims under §§ 1322 and 1325.  The court then focused its analysis on the ambiguity of the term "outside the plan."  The Fifth Circuit noted the historical context regarding the term "payments outside the plan" began with the Bankruptcy Act of 1898.  The court stated:

> The question whether claims were dealt with by the plan or were treated outside the plan was significant under the Bankruptcy Act of 1898, precursor of the present Bankruptcy Code, because the Act required that secured creditors whose claims were dealt with by a plan approve the plan. As explained in *In re Blevins*, 1 B.R. 442, 443 (Bkrtcy.S.D.Ohio 1979), cited by the bankruptcy court:
>
>> (B)ecause of the provision in s 652 of Chapter XIII that 'secured creditors whose claims are dealt with by the plan' had to accept such a plan, the practice developed in Chapter XIII that certain secured creditors were not dealt with by the terms of the plan, but rather were to be treated 'outside' the provisions of the plan. This practice was intended to avoid the problem of a rejecting secured

> creditor being dealt with by the plan, and thus creating, in the view
> of some courts, a bar to confirmation.

***Foster,*** 670 F.2d at 485 (quoting ***In re Blevins***, 1 B.R. 442, 443 (Bankr. S.D. Ohio 1979)).

The Fifth Circuit then agreed with the debtors in finding that they could act as disbursing agents under their plan for purposes of paying their mortgage lender directly subject to meeting the feasibility test of § 1325(a)(6). ***Foster,*** 670 F.2d at 486. Moreover, the court agreed with the debtors that Congress left open, in § 1326(b)[5], the debtors' ability to make direct disbursements to creditors under the plan. ***Id***. (citations omitted). The Fifth Circuit concluded that by allowing the debtors to make payments outside the plan to a creditor, the debtors were availing themselves of Congressional intent permitting flexibility in proposing Chapter 13 plans and the payment of claims. ***Id***. As such, the court found that, under this "flexible approach" paradigm, it would be appropriate for debtors to serve as disbursing agents for mortgage payments, subject to the sound discretion of the bankruptcy court while meeting the requirements of § 1325. ***Id***. (citations omitted).

In addition, the Fifth Circuit also analyzed the terminology of "outside the Plan" as it related to treatment of fully secured mortgage claims. The court first made the distinction between unsecured, partially secured, and fully secured claims as to their treatment outside the plan; noting that the issue of unfair discrimination (preferential payment of some claims outside the Chapter 13 plan) is not implicated by paying fully secured claims outside the plan. ***Id***. at 488. The Fifth Circuit found that there is no issue as to unfair treatment of fully secured claims because those claims must be separately treated under § 1325(a)(5). ***Id***. The court then found that:

---

5 (b) Before or at the time of each payment to creditors under the plan, there shall be paid--
    (1) any unpaid claim of the kind specified in section 507(a)(2) of this title;
    (2) if a standing trustee appointed under section 586(b) of title 28 is serving in the case, the percentage fee fixed for such standing trustee under section 586(e)(1)(B) of title 28; and …

9

> Several sections of Chapter 13 refer to payments "under the plan" (§§ 1302(e)(2) or 1326(b)) or to claims "provided for by the plan," (§§ 1325(a)(5) and 1328(a)) suggesting that Congress contemplated that there might be payments not "under the plan" or claims not "provided for by the plan." Although we do not say that such statutory language must always be so read, such a reading in this case seems consistent with Congress' intent that debtors be given substantial flexibility in formulating Chapter 13 plans. Section 1325(a)(5), for instance, sets out criteria for the treatment of allowed secured claims "provided for by the plan."

*Id.* at 488.

The court also addressed the issue of whether the direct payment of post-petition mortgage payments would be impermissible because direct payments would not include a Chapter 13 trustee commission. The court found the question of a trustee commission subsumed into the discretion of the bankruptcy court in terms of how a fee may be affected by direct mortgage payments. *Id.*; *see also **In re Reid***, 179 B.R 504, 507-08 (E.D. Tex. 1995) (decision as to whether the debtor may act a disbursing agent left to sound discretion of the bankruptcy judge), *aff'd*, 77 F.3d 472 (5th Cir. 1995); ***Cohen v. Lopez (In re Lopez)***, 550 F.3d 1202 (9th Cir. 2008) (Code does not require that payments to a mortgagee be made through the trustee). More importantly, the Fifth Circuit recognized that the primary reason that the debtors wanted to pay their post-petition mortgage payment directly to the lender was to avoid the inclusion of a trustee commission which allowed their plan to be more feasible. ***Foster,*** 670 F.2d at 491-92. As such, the court held that payments made directly to a mortgage lender was part of the overall flexibility of the Chapter 13 plan process and that a bankruptcy court could factor into its discretion whether the direct payments to a mortgagee were permissible under the facts and circumstances of the case. *Id*. The Fifth Circuit then held:

> In summary, in its efforts to make Chapter 13 an attractive alternative for overextended debtors, Congress provided for a significant amount of flexibility in the debtor's plan formulation. Two examples appear in this case: the choice of disbursing agent and the choice of how to deal with fully secured mortgage claims.… Our greatest concern in this case, though, is the use of these issues as a semantic battleground for what we believe to be the real concern in this case-the

10

trustee's fee. Clearly this is the primary reason for the Fosters' desire to serve as disbursing agents and to label their payments as "outside the plan." We are satisfied that Congress did not intend the trustee's fee to turn on the labels employed by a debtor. In determining what payments are subject to the fee, then, we look to the actual treatment of the claims and not the semantic treatment. Specifically, in this case, we find no warrant in the Bankruptcy Code for labelling [sic] part of the treatment of a claim "outside the plan" and part of it "under the plan" where the entire treatment is that which has been made available to the debtor through the provisions of Chapter 13.

*Foster,* 670 F.2d at 492-93.

The Fifth Circuit's analysis in *Foster* supports the Trustee's contention that payments made directly to a mortgage lender are payments made under the plan.[6] Bankruptcy courts have followed *Foster's* analysis in holding that direct mortgage payments are payments under the plan. For example, in the Southern District of Texas (a "conduit" district), the court held:

The term "under the plan" properly refers to any payment made pursuant to the provisions of a Chapter 13 plan, regardless of whether such payment is made through the trustee or by a debtor directly to a creditor. Unfortunately, over the years, certain nomenclature has evolved which has led to confusion over the meaning of the phrase "under the plan." The term "outside the plan" is bankruptcy parlance that has been used to describe a [postpetition mortgage] payment made by a debtor directly to a creditor without going through the Chapter 13 trustee. Some practitioners and courts believe that making a payment "outside the plan" means that the payment is not made "under the plan." Conversely, the term "inside the plan" has been used to describe a payment made by a debtor through the trustee, and some practitioners and courts believe that only such payments as these are made "under the plan." This Court disagrees with both of these views. Every Chapter 13 plan which this Court has reviewed reflects which claims will be paid through the trustee and which claims will be paid directly by the debtor; therefore, *when the plan is confirmed, all payments that are referenced in the plan, regardless of whether they are made by the trustee or directly by the debtor, are payments made "under the plan."* For these reasons, the Court believes that the use of the terms "outside the plan" and "inside the plan" are confusing. It would be preferable to discard the use of these two phrases and, instead, use the phrases "payments through the trustee" and "direct payments by the debtor"—all of which are payments made "under the plan."

*In re Perez*, 339 B.R. 385, 390 n.4 (Bankr. S.D. Tex. 2006) (internal citations omitted)

---

6 The Debtors argue that the terms of the plan control, and, as such, once plan payments are completed they have fulfilled their requirements to achieve a Chapter 13 discharge. Under *Foster*, this assertion is incorrect. Plan payments are not completed until all payments are made pursuant to the plan, including mortgage payments.

(emphasis added), *aff'd*, 373 B.R. 468 (S.D. Tex. 2007); *see also* **Giesbrecht v. Fitzgerald**, 429 B.R. 682, 690-91 (9th Cir. BAP 2010) ("Bankruptcy courts may require that payments be made through the plan based on specific factors or reasons such as administrative efficiency, tracking of payments, fairness and treatment of creditors, and the determination that there is a reduction of plan failure when all payments are made through the plan") (citations omitted); **In re Padilla**, 365 B.R. 492, 502 (Bankr. E.D. Pa. 2007) ("[I]t is a misstatement to refer to a debtor's post-petition contractual payments as being 'outside the plan' . . . . [Rather,] [i]t follows that a debtor's contractual postpetition payments are made *pursuant to the plan*, *not outside the plan*.") (emphasis in original).[7]

In following the Fifth Circuit's analysis in **Foster** that semantics do not alter the fact that mortgage payments are payments made pursuant to the plan, Debtors arguments to the contrary fail. Debtors maintain that § 1328(a) requires that they receive their discharge once they complete their plan payments, exclusive of any mortgage delinquency. Second, Debtors argue that "payments under the plan" are only those payments "guided by" or "controlled by" their Plan (ECF No. 55, p. 6). Further, Debtors argue that payments made directly to the mortgage lender are not payments "guided by" or "controlled by" the plan.

The fact remains, however, that Debtors did not make all their payments under their Chapter 13 plan. Debtors are entitled to receive a discharge only when they meet all the requirements of Chapter 13, including payments under the plan and the "maintain and cure" provisions of § 1322(b)(5). Debtors do not receive a discharge if they are unable to make both plan and post-petition mortgage payments. Plans are contracts between Debtors and their creditors; the Court sees little reason to excuse non-payment of a mortgage simply because no

---

7 The court in **In re Venuto**, 343 B.R. 120, 133 (Bankr. E.D. Pa. 2006), observed that "common sense suggests that for a debtor to cure a prepetition delinquency under § 1322(b)(5), there must come a point in time when the debtor is current on the postpetition monthly installments … and the creditor has received distributions from the trustee which satisfy prepetition arrears."

one other than the Trustee objects. Further, at the time of confirmation, Debtors represented in their Plan that they could make both their Chapter 13 plan payments and direct payments to their mortgage lender. That representation was inaccurate.

Based on the legal conclusion that post-petition mortgage payments are plan payments, Debtors' arguments fail because Debtors have not made all of their payments pursuant to the plan. Moreover, Debtors' assertions fail because case law demonstrates that mortgage payments are payments that are guided by or controlled by the plan. The fact that there is a contractual relationship between Debtors and their mortgage lender does not alter the conclusion that Debtors' mortgage payments are made pursuant to the plan. The Fifth Circuit in *Foster* found that direct post-petition mortgage payments were part of the overall flexibility of Chapter 13 plan formulation, but that direct payments to mortgage lenders were still part of the plan treatment process. *Foster,* 670 F.2d at 492-93.

Debtors also argue that the Court must limit "payments under the plan" to only payments made to the Trustee so that the Court may harmonize the language of §§ 1328(a) and 1329(a). Debtors argue that modification of a plan is no longer permitted once the debtor pays the final payment to the trustee under the terms of the plan. § 1329(a). Further, Debtors maintain that § 1328(a) entitles Debtors to a discharge once all payments are made "under the plan." As such, Debtors reason that, to allow the Trustee to deny Debtors' discharge under § 1328(a) because of a material default under the plan, but deem the payments completed under the plan for purposes of no further modifications under § 1329(a), would lead to an inconsistent application of both sections of the Code. The Court disagrees. Debtors have the ability to modify their plan, particularly where there has been a plan default, such as failure to maintain their post-petition mortgage payments. Debtors know that they are not making their mortgage payments; the Trustee does not. By the time Debtors seek a discharge under § 1328(a), the Trustee has no

13

recourse other than to seek denial of discharge or dismissal of Debtors' case because Debtors'

have failed to modify their plan further to include delinquent mortgage payments.[8]  The Court

agrees with both Debtors and the Trustee that modification may not occur after completion of the

*term* of the plan payments; but disagrees with Debtors that all payments have been made under

the plan because they have not.

III.    The Form Plan

The San Antonio Form Chapter 13 Plan, (ECF No. 2, pg. 3), has the following language

that the Trustee relies upon in support of her arguments:

### Direct Payments to Creditors

> Certain claims may be paid directly to the holders thereof, not by the Chapter 13
> Trustee, but rather by the Debtor(s) or some other party who shall be deemed
> acting as disbursing agent of the Trustee for payment of such claims. Creditors
> receiving such direct payments outside the plan may continue to issue payment
> books, coupons and any other method normally used to make and receive periodic
> payments and this shall not violate the provisions of 11 U.S.C. § 362.

The Trustee argues that, pursuant to the above-referenced plan provision, Debtors are

making payments to the mortgagee as a disbursing agent of the Trustee which is the functional

equivalent of Debtors making payments through the Trustee as if the payments were pursuant to

a "conduit" plan.  Further, the Trustee asserts that because Debtors failed to make post-petition

mortgage payments as required in the plan and order confirming plan, Debtors are in material

default of the plan.

Debtors instead point to language in the form plan itself that they maintain supports a

discharge being entered after all payments to the Trustee have been made:

> Regardless of the total term, unless there has been a change in circumstances, the
> plan shall be deemed to have been completed when the Chapter 13 Trustee has
> received from or on behalf of the Debtor(s) an amount equal to the number of

---

[8] Debtors may seek to modify their own plan so long as it does not extend the term of the plan beyond sixty months.
§ 1329(c).  Where the debtors have already remained in Chapter 13 for the full sixty month term, modification is no
longer available to the debtors or the Trustee.

months specified in the Plan times the monthly plan payment or an amount necessary to pay the claims of general unsecured creditors in full, whichever first occurs, and as adjusted by any post-confirmation modifications of the amount of the monthly plan payment.

(ECF No. 2, p.1).

Debtors cite this language in the form plan in support of their contention that the plan itself determines that a plan is completed when all payments to the Trustee have been made. Debtors contend that the terms of the plan control and bind all parties. ***Meza v. Truman***, 467 F.3d 874, 877 (5th Cir. 2006). Debtors also argue that completion of the plan is not predicated on status of the mortgage being either current or delinquent in payments.

Debtors also believe that the following language in the plan regarding "payments outside the plan" to mortgage lenders is a clear indication that mortgage payments were not intended to be paid under the plan:

> Certain claims may be paid directly to the holders thereof, not by the Chapter 13 Trustee, but rather by the Debtor(s) or some other party who shall be deemed acting as disbursing agent of the Trustee for payment of such claims. Creditors receiving such direct payments outside the plan may continue to issue payment books, coupons and any other method normally used to make and receive periodic payments and this shall not violate the provisions of 11 U.S.C. § 362.
>
> . . .
>
> If the payment of any debt is proposed to be paid directly by the Debtor outside the Plan, it is so noted in the "Specific Treatment of Allowed Claims" set forth above.

(ECF No. 2, pp. 3 & 6).

The Court recognizes that there are portions of the form plan that arguably support both the Trustee's and Debtors' positions. Notwithstanding the ambiguity in the form plan, the Court finds that § 1322(b)(5) requires that Debtors cure and maintain payments for long term debt. That is, Debtors may cure a pre-petition mortgage delinquency through the plan, but they must do so by also staying current on their mortgage. Additionally, the Court finds that ***Foster***

15

dictates that regardless how a plan is written, post-petition mortgage payments are payments made pursuant to the plan and the failure to maintain such payments will result in dismissal, conversion, or denial of discharge.

**IV.     How Should the Court Construe and Apply the Notice Under Rule 3002.1?**

Debtors argue that when the Trustee served her notice under Rule 3002.1, the Trustee is estopped from taking the position that Debtors have not made all their payments under the plan. Bankruptcy Rule 3002.1(f) states that:

> Within 30 days after the debtor completes all payments under the plan, the trustee shall file and serve on the holder of the claim, the debtor, and debtor's counsel a notice stating that the debtor has paid in full the amount required to cure any default on the claim. The notice shall also inform the holder of its obligation to file and serve a response under subdivision (g). If the debtor contends that final cure payment has been made and all plan payments have been completed, and the trustee does not timely file and serve the notice required by this subdivision, the debtor may file and serve the notice.

Debtors cite the language in Rule 3002.1(f) – "after the debtor completes all payments under the plan" – as an admission by the Trustee that once she served her Notice of Final Cure Payment, she adopted the position that Debtors have made all payments under the plan. As such, Debtors maintain that the Trustee is now judicially estopped from asserting that Debtors have not made all plan payments and are subject to dismissal or denial of their discharge.

The Trustee responds by noting that the Notice of Final Cure Payment only requires the Trustee to certify that the debtor has made all payments to cure a default on a claim; that is payments the Trustee makes to the mortgage lender to cure an arrearage. The Trustee notes that the Trustee provides no information to the mortgagee regarding post-petition mortgage payments because Debtors make the post-petition mortgage payments directly to the lender and act as the disbursing agent for the Trustee. Moreover, if the debtor is current on post-petition mortgage payments, the debtor has met the requirements of § 1322(b)(5), which requires a debtor to cure

16

and maintain mortgage payments.

In addition, pursuant to Rule 3002.1(g) – Response to Notice of Final Cure Payment – it is the mortgage lender, not the Trustee, who has both the information and duty to report if Debtors have failed to make their mortgage payments post-petition. The Trustee notes that Debtors have the ability under Rule 3002.1(h) to file a motion to determine that the debtor has cured the default and paid all post-petition amounts.[9] As such, the Trustee is not taking inconsistent positions that would lead to the application of judicial estoppel. The Trustee has only certified in her Rule 3002.1(f) notice that she has made all cure payments to the mortgage lender. She cannot certify if Debtors have made all post-petition mortgage payments because she lacks personal knowledge. The Rule 3002.1(f) notice does not certify, as Debtors suggest, that the Trustee has acknowledged that all plan payments have been made, including post-petition mortgage payments. Therefore, judicial estoppel does not apply.[10]

## V.  Is the Failure to Make Post-Petition Mortgage Payments a Basis for a Denial of Discharge?

The Trustee argues that the failure to make direct mortgage payments post-petition is a material default under the terms of the confirmed plan. The Court agrees. Section 1307(c)(6) states that:

---

[9] The Debtors further argue that the only purpose of the Rule 3002.1 notice is to protect unsuspecting debtors from unwarranted mortgage charges and practices. *See In re Sheppard*, 2012 WL 1344112 (Bankr. E.D. Va. April 18, 2012). The Debtors argue that the Trustee is using the notice beyond its intended purpose; that is, to verify mortgage charges and payments and not to be utilized as a basis for dismissal or denial of discharge. The Debtors also maintain that the Trustee may not use the 3002.1 Notice as a means to compel the Debtors to amend their plan or pay the delinquency. That is not what the Trustee is alleging. The Trustee is simply arguing that based on the Debtor's failure to make plan payments, and, that the only notice of the delinquency occurred after all plan payments were supposed to have been made, the only recourse for the Trustee is to ask for dismissal of the case or denial of discharge. The Trustee is not asking the Court to construe the Rule 3002.1 notice in any other way.

[10] It was also suggested at the hearing that Debtors rely on counsel's representations that they will receive a discharge if the Debtors make all plan payments, exclusive of post-petition mortgage payments. Moreover, it was also suggested that because the Trustee previously did not assert that failure to make post-petition mortgage payments was material default under the plan, the Debtors relied on this inaction with the belief that they would receive a Chapter 13 discharge. These arguments are unavailing – there was no detrimental reliance because there is no allegation that the Trustee told the Debtors that they would receive their Chapter 13 discharge despite not making their post-petition mortgage payments.

> Except as provided in subsection (f) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including[11]—
>
> . . .
>
> (6) material default by the debtor with respect to a term of a confirmed plan; . . .

The First Circuit Bankruptcy Appeals Panel held in **Roberts v. Boyajian**, 279 B.R. 396, 399-400 (1st Cir. BAP 2000), *aff'd* 279 F.3d 91 (1st Cir. 2002), that the debtors' failure to pay an allowed tax claim under § 1305(a) was a material default under the plan because the tax claim had been provided for in the plan.  The court concluded that the debtors were bound by the terms of their plan, including payments on the IRS's post-petition tax claim.  The court found the non-payment of taxes a material default under the plan.  *Id*.  (citations omitted).  This Court finds that the failure to make direct payments to a mortgage creditor is no different.  *See* **Foster,** 670 F.2d at 492-93("[W]e find no warrant in the Bankruptcy Code for labelling [sic] part of the treatment of a claim 'outside the plan' and part of it 'under the plan' where the entire treatment is that which has been made available to the debtor through the provisions of Chapter 13."); *accord* **In re Land**, 82 B.R. 572, 578 (Bankr. D. Colo. 1988) ("[I]f the creditor's claim is somehow modified (e.g. by curing the arrearages pursuant to § 1322(b)(5)), then all payments, whether direct or through the trustee, are considered to be 'under the plan'."), *aff'd*, 96 B.R. 310 (D. Colo. 1988); **In re Perez**, 339 B.R. 385, 390 n.4 (Bankr. S.D. Tex. 2006) (Under the plan refers to any payment made pursuant to the plan, whether the payment is made through the trustee or directly to a creditor.); **In re Russell**, 458 B.R. 731, 739 (Bankr. E.D. Va. 2010) ("[I]f the plan

---

[11] "Several potential grounds for relief are listed in [s]ection 1307(c), but they are not exclusive."  **In re Puckett**, 193 B.R. 842, 845 (Bankr. N.D. Ill. 1996)(citations omitted). "It is an established rule of construction for bankruptcy statutes that 'includes' and 'including' are not limiting." **In re Lilley**, 91 F.3d 491, 494 (3d Cir. 2003); § 102(3).  "It is therefore beyond dispute that a court may consider matters other than those enumerated in section 1307(c) as grounds for dismissal of a chapter 13 petition." *Id*. (citations omitted).

defines the payment terms, . . . then the payments are being made 'under' the plan regardless of whether the debtor pays the creditor directly or pays through the trustee.").[12]

Debtors argue that they did not default on any of the terms of the Plan and that the Trustee has failed to establish "cause" under § 1307. Debtors also maintain that the Trustee has not shown that dismissal is in the best interests of the creditors and the bankruptcy estate. Debtors further contend that, if a default occurred as to post-petition delinquent mortgage payments, it was not "material." Debtors suggest that if the Court finds that delinquent post-petition mortgage payments are a material default under the plan, then Debtors will be placed in the untenable position of continually modifying their plan to account for fluctuations in escrow balances and changes in mortgage interest rates for variable mortgages. Debtors also assert that if the Court adopts the Trustee's position as to post-petition mortgage payments, then the Trustee could resort to arguments regarding non-payment of other direct payments, such as student loans. Debtors also maintain that the Bankruptcy Code, nor their Chapter 13 Plan, require them to cure a post-petition mortgage deficiency. They observe that the failure to make mortgage payments is not uncommon in Chapter 13 cases and the lender has remedies to protect itself.

Debtors' arguments are unavailing. They complain of the Trustee's actions as if they had no responsibility for their own failure to make post-petition mortgage payments. Debtors suggest that the Trustee is misusing the Bankruptcy Code and Rules. The Trustee is not. The Court has examined the applicable case law and concludes that Congressional intent, as formulated in the Bankruptcy Act of 1898, and subsequently analyzed in case law, holds that Chapter 13 debtors are afforded flexibility in proposing their plans, including making post-petition mortgage payments directly to their mortgage lender. In doing so, Debtors are then

---

12 The Trustee provided two unreported cases from the District of Colorado that rely on the same authorities as this Court in finding that post-petition mortgage payments are payments under the plan and the failure to make them is a basis for dismissal, conversion to Chapter 7, or denial of discharge. *See In re Nicole Daggs*, No. 10-16518-HRT (Bankr. D. Colo. January 13, 2013); *In re Furuiye*, No.10-15854-SBB (Bankr. D. Colo. April 7, 2014).

19

required to make their post-petition mortgage payments as well as their plan payments to the Trustee, all as payments pursuant to the plan.

## CONCLUSION

As such, the Court finds that Debtors' assertion that the failure to make mortgage payments in the amount of $33,467.32 was not a material default under the plan is without merit. Therefore, the Court must determine what remedy is warranted under the circumstances. A denial of discharge places Debtors in the difficult position of potentially seeking further bankruptcy relief and would require creditors to determine the legal effect of a denial of discharge on future bankruptcy filings. The Court believes a more just result is to allow Debtors fourteen (14) days from entry of this Memorandum Opinion and Order to convert their case to Chapter 7 or the case shall be dismissed.

IT IS THEREFORE ORDERED that the Trustee's Motion to deny the Debtors' discharge is DENIED and the Trustee's Motion to Dismiss Case is GRANTED, subject to Debtors exercising their right to convert this case to Chapter 7 within fourteen (14) days of entry of this Memorandum Opinion and Order.

All other relief is DENIED.

# # #